**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
(Ft. Lauderdale Division)

Case No.: 13-60014-CIV-SCOLA, JR./SNOW

IT STRATEGIES GROUP, INC.,

    Plaintiff,

vs.

THE ALLDAY CONSULTING GROUP, L.L.C.,
DANNY DEAN ALLDAY, and
TRANG TRAN,

    Defendants.
_____/

## DECLARATION OF DANIEL S. JACOBS IN SUPPORT OF PLAINTIFF IT STRATEGIES GROUP, INC.'S MOTION FOR ENTRY OF PRELIMINARY INJUNCTIVE RELIEF AGAINST DEFENDANTS

I, DANIEL S. JACOBS, declare under penalty of perjury that the foregoing is true and correct:

1. I am the Vice President of Plaintiff IT Strategies Group, Inc.

2. Prior to the release of Plaintiff's OILCLAIM CALCULATOR ("Mark") product for software ("Software") directed to the qualification and quantification of losses stemming from the Deepwater Horizon/Macondo Blowout ("Blowout") occurring in the Gulf of Mexico in 2010, there was no other software like it on the market. The Software is marketed to all size firms. However, Plaintiff's principal market targets small and medium sized professional services entities, like attorneys or accountants, or their firms, who prepare a batch or group of loss assessments for their individual clients who seek compensation from the Deepwater Horizon settlement fund. Without Plaintiff's Software, it is likely these small to medium sized firms

would not have had the ability to comply with the Blowout's complex Settlement Agreement, and would have had to refer out potential clients, and thus lose business, to larger firms.

3. Prior to the creation of Plaintiff's Software, there was no wholesale software solution available being offered or sold to these professionals to assist their clients in qualifying and quantifying their Blowout losses.

4. Plaintiff addressed this lack of a wholesale solution by creating the Software, and by further creating a unique business model to commercialize it. In so doing, the Plaintiff's Software enables attorneys, accountants, and loss preparation firms to extend their reach and lower the time and effort to produce each loss assessment by 50-80% with a standardized solution available at a discounted price under a prepaid cloud-based Software license. This Software solution was featured by a number of news media beginning in August, 2012, including television and print media. Composite Exhibit A.

5. From on or about January 15, 2012 through on or about September 19, 2012, Plaintiff created the Software, and improved it with the addition of several versions. Plaintiff's cost of creation including the improvements is approximated to be $640,000.00 involving over 2500 man hours of time. Plaintiff targets its potential customers through online advertising such as GOOGLE.COM, professional continuing education events, and in trade publications.

6. Plaintiff's Software is offered for sale through its website using a variant of its Mark, OILCLAIMCALCULATOR.COM. The website was created on June 13, 2012. Exhibit B.

7. Upon information and belief, Defendants provide accountant services to their clients. Defendant Danny Dean Allday is the namesake of the corporate Defendant, and a certified public accountant. Defendant Tran is an employee of the corporate Defendant specializing in software and information technology.

8. Upon information and belief, and prior to August 22, 2012, Defendants were marketing their accountancy services directly the individual clients, and offering to assist them in reporting their Blowout losses, under the name "Allday Consulting." Exhibit C.

9. On August 22, 2012, Defendants contacted Plaintiff for the purpose of evaluating its Software. Composite Exhibit D. At this time, Defendants were still acting as accountants and servicing their personal, individual clients. Defendants were not, prior to this time, offering any loss assessment software to professionals to assist them in preparing assessments for their clients's losses resulting from the Blowout as the Plaintiff was doing under its Mark.

10. After the initial contact by Defendants with Plaintiff on August 22, 2012, Plaintiff responded and offered Defendants an online tutorial of the Software to which the Defendants agreed. The tutorial occurred on September 4, 2012 with a representative of Plaintiff and all of the Defendants in attendance at the online presentation. At the conclusion of the presentation, Defendants were offered the standard, free 48 hour trial period within which to evaluate the Software as is offered to all potential customers. The Defendants, however, asked for and received two extensions to the free trial period for a total of a one week trial period.

11. Defendants activated the free trial period with a username and password provided by

Plaintiff. Composite Exhibit D. Defendants' acceptance of the trial period included acceptance of terms and conditions of an Online User Agreement, including Software use restrictions (Paragraph 1.3) and confidentiality provisions relating to Plaintiff's proprietary information (Paragraph 12). Composite Exhibit D. After the aforementioned trial period for Defendants expired, Plaintiff followed up on several occasions to determine if they were going to purchase the Software. Ultimately, Defendants refused to purchase the Software. Composite Exhibit D.

12. On October 17, 2012, Defendants created a new website called BPCLAIMCALCULATOR.COM, and BPOILCLAIMCALCULATOR.COM on November 27, 2012, to offer software which was the functional equivalent of Plaintiff's Software to attorney and accountant professionals in direct competition with Plaintiff. Composite Exhibit E. Plaintiff is unaware when Defendants' websites went live. Previously, however, on August 16, 2012, Defendants created a website BPCLAIMSCPA.COM, whose purpose was, upon information and belief, to advertise their CPA services only to individual clients needing assistance for loss assessments due to the Blowout. Composite Exhibit E. Accordingly, from at least as early as October 17, 2012, Defendants morphed into a direct competitor of Plaintiff utilizing software that was the functional equivalent of Plaintiff's Software.

13. On October 18, 2012, both Plaintiff and Defendants attended the New Orleans Round Table Event for the Louisiana Society of CPAs as vendors. Plaintiff made a presentation of its Software to the attendee/professionals. Defendants similarly made a presentation of their

new software which they originally called "Causation Calculator." Exhibit C. Exhibit C is the Defendants' brochure that was passed around at the round table event. It falsely states: "Our calculators were developed in-house to provide our CPAs calculation assistance on claims for our own clients. They were such a time-effective solution and an overall success that we wanted to make them available to other CPAs." *Id.* Defendant Allday has also publicly laid claim to being the "[d]eveloper of Deepwater Horizon Oil Claim Calculator". *See* Composite Exhibit S, *infra*.

14. Defendants' software is an unauthorized modified version of Plaintiff's Software as it also is a loss assessment software for the qualification and quantification of losses resulting from the Blowout.

15. After the round table event, Defendants changed the name of their software from "Causation Calculator," to Plaintiff's Mark, and began to offer it for sale at their BPCLAIMCALCULATOR.COM website under the designation "Deepwater Horizon Oil Claim Calculator®" and the "Oil Claim Calculator®." Composite Exhibit F.

16. Defendants' website offers for sale Defendants' software, and copies the entire sales, marketing and promotional techniques offered by Plaintiff on its website, including the unauthorized use and disclosure of Plaintiff's confidential pricing model which Defendants learned through their trial subscription with Plaintiff.

17. Plaintiff's Software was developed pursuant to the following time line:
    - May 15, 2012 - Plaintiff's Software final beta version is available
    - June 1, 2012 - Plaintiff's Software officially launched to the public (Version 1.0).

Plaintiff's Software develops and configures Blowout loss assessments in compliance with the rules and guidelines of the Deepwater Horizon Settlement Authority on a cloud-based system over the internet. Software computes accurate and credible losses in an easy-to-read and easy-to-submit Claim Report for each client file. It provides instant access to high quality data and allows editing of data and reports to suit individual loss circumstances. The Software calculates zones for each client based on the Deepwater Horizon Settlement Agreement's specified geographical layout, and determines the highest and best benchmark assessment for each claim.

- July 30, 2012 - A causation test is added to Plaintiff's Software (Version 1.1). This version performs presumptive and V-shaped upturn and downturn causation tests for business economic losses in seconds once the loss file is entered into the Software. It generates a standardized and accepted loss report that includes all pertinent loss information as well as financial exhibits including Schedule 1 (Revenue Stream Worksheet with Calculator Step 1); Schedule 2 (Benchmark Calculations); Schedule 3 (Variable Cost Worksheet), Schedule 4 (Payroll Worksheet), and an additional V-Shaped Revenue Pattern Causation Test. All of Plaintiff's Software's algorithms are in compliance with the rules and guidelines of the Deepwater Horizon Settlement Authority.

- September 19, 2012 - Plaintiff's Software Version 2.0 is released. This version provides highly accurate zone map assessments, and upgrades algorithms for calculations of geographical zone and map files. It increased efficiency and automation of the benchmark assessment algorithms and V-test algorithms. Plaintiff's older version of the Software required user intervention in choosing benchmark periods. Version 2.0 automates the entire process from beginning to end by calculating the best value benchmark assessment and choosing it automatically with a highlighted message stating "This is your best benchmark period." It also provides complete automation of Step 1/Step 2 assessments, and compensation algorithms. The best months in the Step 1/Step 2 assessments are tested and selected by sophisticated algorithms and will run the "maximize calculations" instantly after all profit and loss data are entered. Finally, Version 2.0 upgrades subroutines for building and printing reports for users. The reports in this version of the Software take roughly 5-10 seconds to print versus 30-60 seconds in previous versions, and report printing formats are cleaner and more professional to allow for advanced and foreign symbols and characters.

18. Defendants' software provides the same functionality of Plaintiff's Software as set forth below in the following comparison of the two:

   1. <u>Claim Listing Screen</u>

    a.    Plaintiff's Software begins with a proprietary Claim Listing Screen where preparers can view the claimant list, the causation tests passed/failed, the geographical zone of the claimant, and the total compensation (suggested settlement amount) for the claim. Exhibit G1.

    b.    Defendants' software begins with a similar Claim Listing Screen where preparers can view the claimant list, the causation tests passed/failed, the geographical zone of the claimant, and the total compensation (suggested settlement amount) for the claim. Exhibit G2.

The Claim Listing Screen is a function of Plaintiff's proprietary Software and is a function of its batch processing concept embodied in the Software. This screen is not required to submit any specific claim to the Settlement Authority.

2.    <u>Add/Edit Claim - Data Entry Screen</u>

    a.    Plaintiff's Software has an Add/Edit data entry screen to create or edit a claim where the claimant's name and address are entered and a geographical zone is calculated per the DWHSA Maps; the NAICS codes are entered. Exhibit H1.

    b.    Defendants' software has an Add/Edit data entry screen to create or edit a claim where the claimant's name and address are entered and prompts the user to enter a geographical zone; the NAICS codes are entered. Defendants' software does not have geospatial mapping data and does not calculate a zone. However, Defendants modified Plaintiff's Software to include in their software a functionally equivalent link to public mapping data. Exhibit H2.

This screen is also proprietary to Plaintiff's Software and is a function of its batch processing concept embodied in the Software. This screen is not required to submit any specific claim to the Settlement Authority.

3.    <u>Enter Variable Costs and Payroll Screen</u>

    a.    Plaintiff's Software prompts the user to create the headers for each item off of the client financial statement. No numbers are entered at this point. First it requests variable costs headers. Exhibit I1

      b.      Plaintiff's Software screen where variable costs then payroll costs are entered is very similar to that of Defendants' software after the header creation step. Since December 2012, Defendants' software now has this in a different order, where it requests revenue first, then variable costs, then payroll. Originally, the order was the same as Plaintiff's Software as illustrated in attached screen shots. Exhibit I1

      c.      Defendants' software prompts the user to enter variable costs first and type headers into the Excel spreadsheet based software. Defendants' software prompts the user to enter payroll costs last. Exhibit I2

      d.      Both parties' programs have a suggested list of variable costs that are allowed under the Deepwater Horizon Settlement Agreement on this screen. This feature is new and was available in Defendants' software since December 2012 but not previously. The chart showing variable costs allowed is identical to the chart in Plaintiff's Software since June of 2012.

4.      <u>Enter Revenues Screen</u>

      a.      Plaintiff's Software prompts the user to create the headers for each item off of the client financial statement. No numbers are entered at this point. Exhibit J1.

      b.      Plaintiff's Software screen where revenues are entered is very similar to that of Defendants' software after the header creation step. Since December 2012, Defendants' software now has this in a different order, where it requests revenue first, then variable costs, then payroll. Originally, the order was the same as Plaintiff's Software as illustrated in attached screen shots. Exhibit J2.

      d.      Defendants' software prompts the user to enter revenues and type headers into the Excel spreadsheet based software. Exhibit J2.

5.      <u>Causation Test Screen</u>

      a.      Plaintiff's Software's next screen after entering variable costs, payroll, and revenue is the causation calculator. This screen runs over 172 calculations in the background and chooses the best case benchmark scenario for the claimant, selects and highlights the best case scenario for the biggest settlement, and then runs all four (4) causation tests in the background. Exhibit K1.

  b. Defendants' software originally had the identical causation test screen printout to Plaintiff's Software before December 2012. The newer version of Defendants' software changes this screen and has a new screen called "Causation Calculator" that has all of the same data as Plaintiff's Software but in a slightly different layout. Exhibit K2.

6. <u>Document Upload Screen</u>

  a. Plaintiff's Software allows the client to upload supporting documents to the claim file prior to printing the Plaintiff's proprietary claim report. Any documents uploaded will be appended to the end of the claim report as additional evidence for submission. Exhibit L1.

  b. Defendants' software allows the client to upload supporting documents to the claim file that can be linked into the Excel spreadsheets. Exhibit L2.

Plaintiff's Document Upload Screen is proprietary in that it permits the uploading of multiple documents as a single document. Defendants' software copies this functionality.

7. <u>Claim Report Screen</u>

  a. The Settlement Authority(DWHSA) processes claims daily without a claim report. Plaintiff created the idea of submitting a supplemental, proprietary claim report with each claim to simplify the review process for the court administrated settlement center. Plaintiff's claim report is printed at the end of the claim and is a report that includes the zone maps, a summary, total compensation, statements from the claim preparer, and a final printout of all spreadsheet screens of financial data. Exhibit M1 (compare last four pages to Exhibit M2.).

  b. Defendants' software did not have a claim report screen in December 2012. Now, Defendants' software has a "Compensation Calculations" screen that shows all the same final printouts of all spreadsheet screens of financial data, similar to Plaintiff's proprietary report. Exhibit M2.

19. In addition to copying and/or modifying Plaintiff's Software without authorization, Defendants copied Plaintiff's style of doing business with the their modified software as

follows:

A.  Defendants copied Plaintiff's website text error in the use of a notice of federal trademark registration, "®", by its Mark, when the Mark was not federally registered. Composite Exhibit N. That mistake was corrected by Plaintiff on December 19, 2012, but was nonetheless copied by Defendants next to their use of "Oil Claim Calculator®" on Defendants' website and print marketing materials. Composite Exhibit F. Defendant has no federal registration for any designation that it uses.

B.  Defendants copied Plaintiff's faux, virtual retail box packaging. Exhibit O1. Both parties offer their products online with no packaging accompanying the respective software. Not only did Defendants copy the box packaging, but they did so while imitating Plaintiffs two-tone color scheme and curve separating the colors. Exhibit O2. Defendants also copied Plaintiff's trademark OILCLAIM CALCULATOR and placed that on the fake package. Exhibit O2.

C.  Plaintiff advertises in a number of trade magazines directed to professionals, including a Louisiana based magazine "Lagniappe" directed to accountant professionals. Plaintiff has published display advertisements for its Software in "Lagniappe" in the October and December issues in 2012, and the January/February issue in 2013. Exhibit P1. Defendants similarly have published display advertisements for their software in "Lagniappe" in December, 2012, and January/February, 2013. Exhibit P2.

D.  Defendants copied Plaintiff's trademark OILCLAIM CALCULATOR by their use of it, and have fraudulently represented ownership of it before the United States Patent and Trademark Office. Specifically, Defendants have applied to register in their own name, for software goods for calculating losses and managing claims regarding the Deepwater Horizon Blowout, the mark BP CLAIM CALCULATOR on November 17, 2012, Serial No. 85782031; the mark OIL CLAIM CALCULATOR on November 20, 2012, Serial No. 85783706; and the mark BP OIL CLAIM CALCULATOR on November 27, 2012, Serial No. 85788818. Composite Exhibit Q.

E.  Defendants deceptively market their software to appear to consumers as though it is Plaintiff's Software. In addition to copying Plaintiff's advertising, marketing and promotional models, Defendants have also recently copied Plaintiff's press release of its Version 2.0 Software, Exhibit R1, with Defendants' release of an upgrade version they similarly call "Version 2." Exhibit R2.

F. Plaintiff uses web advertisement as its primary source of business development. On GOOGLE.COM, Plaintiff purchases keyword search terms monthly to attract prospects to its website and sales department. Defendants are also purchasing web advertisements from GOOGLE.COM and are using Plaintiff's Mark so when a consumer searches for "Oil Claim Calculator," they will see Defendants' website prioritized above Plaintiff's website. Composite Exhibit S. Defendants continue use the Plaintiff's Mark in the search results to trick and confuse consumers to go to their website instead of Plaintiff's. The same results occur even in news articles about Plaintiff. On the second page of Exhibit S, Plaintiff was the subject of the article, but Defendants' paid advertisements for its websites BPCLAIMCALCULATOR.COM, and BPCLAIMSCPA.COM appear. Defendants also copied Plaintiff's another form of advertising by presenting at professional continuing educational events.

G. Defendants falsely claim to be the developer of Plaintiff Software to deceive consumers and to cause them to believe incorrectly that they are the originator of such Software when Plaintiff is the originator. Composite Exhibit T.

H. Defendants copied Plaintiff's price sheet and proposal. Attached are Plaintiff's confidential price sheet (pricing redacted), Exhibit U1, and Defendants' order form, Exhibit U2. Here, Defendants explicitly copied the following aspects of Plaintiff's pricing model: (1) bundled and per claim pricing; (2) creation of custom websites for top tier clients; (3) set up fee waived for larger clients, and; (4) full upfront payment discounts.

I. Defendants copied Plaintiff's cloud-based means of delivering access of their software to their customers, and also copied Plaintiff's promotional model of providing free online tutorial sessions in advance of purchase.

20. Defendants' unauthorized copying and modification of Plaintiff's Software offered for sale on BPCLAIMCALCULATOR.COM is directly competitive with Plaintiff, and creates the only competitor of Plaintiff for its Software (a two supplier market).

21. Plaintiff spends approximately $13,000 per month in advertising expenses.

22. Plaintiff has lost business as a result of Defendants' theft of Plaintiff's Software, Mark and style of doing business. Actual confusion has arisen as recently as April 23, 2013, when Defendants sent e mails to Plaintiff's customers advising them of a discount for Defendants' software. Plaintiff's customers thought Plaintiff was offering the discount. Composite

Exhibit V.

Executed this 25 day of April, 2013.

                                                           DANIEL S. JACOBS